# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RENE RAUL MARTINEZ, | Case No. 1:14-cv-00385-SKO |
| Plaintiff, | |
| v. | **ORDER ON PLAINTIFF'S COMPLAINT** |
| | (Doc. 1) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |
| _____/ | |

## I.    INTRODUCTION

Plaintiff, Rene Raul Ramirez ("Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB") benefits and Supplement Security Income ("SSI") benefits pursuant to Titles II and XVI of the Social Security Act.  42 U.S.C. §§ 405(g) and 1383(c)(3).  The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Sheila K. Oberto, United States Magistrate Judge.[1]

---

[1]    The parties consented to the jurisdiction of a U.S. Magistrate Judge.  (Docs. 8; 9.)

## II.     FACTUAL BACKGROUND[2]

Plaintiff was born on June 4, 1953, and alleges disability beginning November 13, 2008. (AR 49; 170; 190-91.) Plaintiff's last date insured was December 31, 2014. (AR 15.) Plaintiff claims he is disabled due to bodily harm, high blood pressure, kidney problems, cholesterol, and liver problems. (AR 191.)

### A.     Relevant Medical Evidence

The ALJ found the medical record demonstrated Plaintiff suffered from multiple right foot fractures, cirrhosis of the liver, alcohol abuse, and anxiety disorder (AR 16), and Plaintiff has agreed to the ALJ's summary and interpretation of the medical evidence in his decision (Doc. 15, p. 4 (citing AR 13-25; 250-432).)

### B.     Testimony

#### 1.     Plaintiff's Disability Application and Activities of Daily Living

On April 7, 2011, Plaintiff described his past relevant work as a refinery Unit Operator as including opening and closing 130 valves every shift and climbing no less than 200 feet a day, lifting and carrying between 60 and 100 pounds no less than 100 yards three times a week, with the heaviest weight he lifted being over 100 pounds and 50 pounds frequently. (AR 200.) In that job, Plaintiff handled large objects and reached three hours each day; walked, stood, and stooped two hours each day; knelt, crouched, sat, and climbed one hour each day; and crawled for half an hour each day. (AR 200.) Plaintiff described his past relevant work as a refinery Maintenance Mechanic as including pulling wrenches most of the day and carrying metal 100 yards or more at least once a shift, with the heaviest weight he lifted being over 100 pounds and 50 pounds frequently. (AR 201.) In that job, Plaintiff handled large objects four hours total and reached for two hours total each day. (AR 201.) Plaintiff also worked as a junk yard operator, potato stacker, and cotton chopper. (AR 202-04.)

//

---

[2] As Plaintiff's assertion of error is limited to the ALJ's application of the medical-vocational guidelines, there is no challenge to the ALJ's consideration of the medical evidence or credibility findings and only evidence relevant to this single argument is set forth below.

Plaintiff complained his condition had worsened on August 26, 2011.  (AR 213-16.)  On December 13, 2011, Plaintiff completed an activities of daily living report, stating that on most days, he watches television from the time he wakes up through the time he takes his sleeping pills at night, he has difficulties handling his personal care, makes simple meals, and his sister "does pretty much all of [his] housework."  (AR 218-20.)  His sister takes him to the grocery store every 2 or 3 weeks for an hour, and he goes to church and doctor appointments once a month or so.  (AR 221-22.)  Plaintiff reported difficulties with his physical and mental abilities, noting that he

> . . . cannot lift more than 5 pounds or walk more than a block without having to stop and rest.  It causes me pain to squat, bend, stand for very long, reach, sit for too long, kneel, and climb stairs.  My hearing is not very good, my memory is bad, and I have trouble completing tasks, concentrating, understanding, following instructions, and getting along with others.

(AR 223.)  He also complained that he "do[es] not like the 'sound of sound.'"  (AR 224.)

On December 14, 2011, Plaintiff completed an adult function report, noting that he lives alone and experiences "a ringing in [his] head all the time."  (AR 234-35.)  He relies on phone calls from his mother and sister to remind him to take his medications and take care of his personal needs, and feeds himself once a day by preparing TV dinners.  (AR 236.)  He states that he is unable to go out alone because he will forget where he is going and is unable to take care of his own finances.  (AR 237-38.)  He does not handle stress or changes in routine well, and is scared of heights and closed spaces.  (AR 240.)

In his field office appeal dated February 10, 2012, Plaintiff reported he was having a difficult time keeping his balance and his memory had worsened (AR 244), but he "can still take care of [him]self" (AR 247).  He was also unable to walk more than one block, stand for more than 15 minutes, or sit for more than 30 minutes at a time.  (AR 244.)

**2.    Third Party Adult Function Report**

Plaintiff's sister Henrietta Provencio completed a third party adult function report on December 13, 2011, noting that she spent five days a week with Plaintiff watching television and cleaning his house.  (AR 226.)  She noted Plaintiff dresses "poorly" and uses a shower chair to bathe, she helps with his hair care and shaving, and Plaintiff needs reminders and help to feed himself.  (AR 227.)  Plaintiff is able to prepare soups and TV dinners once a week, water his lawn

and dust his television, and go shopping every two weeks for an hour. (AR 228-29.) She reports that Plaintiff "had head trauma in [an] accident in 2008" and has since become "forgetable" (*sic*) and requires assistance with most things. (AR 229-33.)

**C.      Administrative Proceedings**

**1.      Plaintiff's Hearing Testimony**

On September 13, 2012, Plaintiff testified at a hearing before an ALJ. (AR 48-66.) Plaintiff testified that he had not worked since November 13, 2008, when he worked for 23 years for Flying J, Big West, first as a maintenance mechanic and then as a unit operator. (AR 49.) As part of his duties, he "used to turn 113 barrels each day and climb towers up to 100 feet[.]" (AR 50.) The highest grade Plaintiff completed was ninth grade, and he never received a GED. (AR 62.)

Plaintiff has a history of alcohol abuse, but has not abused hard liquor since June 2009 and only occasionally drinks beer. (AR 56.) He does not "believe that alcohol is a problem now." (AR 56.) Plaintiff stopped working because he was run over by two cars and sustained head trauma, broken ribs, a broken pelvis, a "punctured" knee, and a "shattered" right foot. (AR 50.) He received various forms of treatment for his injuries from the date of the accident through December 2011, when he "ran out of income" and lacked insurance to cover medical treatment. (AR 51.)

As a result of his injuries, Plaintiff is no longer able to climb due to dizziness, and his hip "bothers" him, his knee locks up, and his right foot swells up and stiffens "every day." (AR 51; *see* AR 51-54.) He also complains of right hand numbness. (AR 57.) Plaintiff is able to carry his 20-25 pound vacuum cleaner for about 30 to 40 minutes each day, and believes he could carry "30 to 50 pounds" "on and off" during an 8 hour day but would "have to strain" to do so. (AR 58-59.) When asked what would prevent him from being able to work a "desk job," Plaintiff testified that "the only thing I think would bother me is just memory, memory loss." (AR 61.)

**2.      Vocational Expert Testimony**

A Vocational Expert ("VE") testified at the hearing. (AR 63-65.) The VE characterized Plaintiff's past relevant work as a natural gas treating unit operator, Dictionary of Occupational

4

1  Titles ("DOT"), 1991 WL 645964, at 549.382-010, light work performed as "heavy" with an SVP
2  of 6[3], and a maintenance mechanic, DOT 638.281-014, heavy work with an SVP of 7[4]. (AR 63.)
3  　　　　The ALJ first asked the VE whether a hypothetical individual of Plaintiff's same age,
4  education, and experience, who is able to sit up to six hours out of eight, stand and walk short
5  distances on level ground up to six out of eight hours, lift 10 pounds frequently and 20 pounds
6  occasionally, stoop and climb stairs occasionally, is unable to work from heights, and is limited to
7  simple, repetitive tasks could perform Plaintiff's past relevant work. (AR 64.) The VE testified
8  that such an individual could not perform Plaintiff's past relevant work and would have no
9  transferable skills to unskilled work. (AR 64.)
10 　　　　The ALJ then asked the VE whether a hypothetical individual with the same limitations as
11 the first hypothetical individual, except that "rather than [being limited to] simple, repetitive tasks,
12 [is limited to] moderately complex tasks not requiring meeting production quotas," would be able
13 to work. (AR 64-65.) The VE testified that such an individual could not perform Plaintiff's past
14 relevant work, but would have transferrable mechanical skills to work on industrial machines as a
15 belt repairer, DOT 630.684-014, semiskilled light work with an SVP of 4[5]. (AR 65.) The VE
16 testified that there are approximately 25,000 occupations as a belt repairer nationally, and 1,150 in
17 California. (AR 65.)
18 　　　　The ALJ finally asked the VE if an additional limitation to preclude work around heavy
19 machinery would render such a hypothetical person unable to perform such work. (AR 65.) The
20 VE testified that such a person would be unable to work as a belt repairer. (AR 65.)
21 **D.    Plaintiff's Complaint**
22 　　　　On October 23, 2012, the ALJ issued his decision finding Plaintiff not disabled. (AR 13-
23 25.) The ALJ found that Plaintiff had severe impairments of multiple right foot fractures, cirrhosis
24 of the liver, alcohol abuse, and anxiety disorder. (AR 16.) The ALJ then determined that

---

[3]　Specific Vocational Preparation ("SVP"), as defined in DOT, App. C, is the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation. An SVP level of 6 would require learning time of over one year up to and including 2 years.

[4]　An SVP level of 7 would require learning time of over 2 years up to and including 4 years.

[5]　An SVP level of 4 would require learning time of over 3 months up to and including 6 months.

Plaintiff's impairments, singly and in combination, did meet or equal a listed impairment. (AR 16.)

Including Plaintiff's impairment of substance abuse, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except he can sit for 6 hours in an 8 hour day, stand and walk short distances on level ground for 6 hours in an 8 hour day, lift 10 pounds frequently and 20 pounds occasionally, cannot work from heights, can occasionally stoop and climb stairs, and can perform simple and repetitive one and two step tasks. (AR 16-17.)

Given this RFC and based on the VE's testimony, the ALJ found that Plaintiff was unable to perform his past relevant work as a natural gas treating unit operator and maintenance mechanic, and his acquired job skills do not transfer to occupations within the RFC for unskilled light work. (AR 20.) The ALJ further determined that given Plaintiff's assessed RFC and all of his impairments, including his substance abuse disorders, there are no jobs that exist in significant numbers in the national economy that Plaintiff is capable of performing. (AR 20.)

However, if Plaintiff stopped the substance abuse, the ALJ determined that Plaintiff would not have an impairment or combination of impairments meeting or medically equaling a listed impairment. (AR 21.) If Plaintiff stopped the substance abuse, the ALJ found Plaintiff retained the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except he can sit for 6 hours in an 8 hour day, stand and walk short distances on level ground for 6 hours in an 8 hour day, lift 10 pounds frequently and 20 pounds occasionally, cannot work from heights, can occasionally stoop and climb stairs, and can complete moderately complex tasks not requiring meeting production quotas. (AR 21-23.)

Given this RFC and based on the VE's testimony, the ALJ found that Plaintiff was still unable to perform his past relevant work as a natural gas treating unit operator and maintenance mechanic, but that Plaintiff had acquired transferable work skills. (AR 23.) The ALJ considered Plaintiff's age, education level, work experience, RFC, and acquired work skills from his past relevant work that are transferable to other jobs, and concluded that a finding of "not disabled" was directed under the framework of Medical-Vocational Guidelines Rule 202.03. (AR 24.) The

ALJ further relied on the VE's testimony that based on Plaintiff's age, education level, work experience, RFC, and acquired work skills from his past relevant work that are transferable to other jobs, Plaintiff was capable of performing the requirements of representative occupation "belt repairer," DOT 630.684-014, with 25,000 occupations nationally and 1,150 in California. (AR 24.)

Because Plaintiff's substance abuse disorder is a contributing factor material to the disability determination, and Plaintiff would not be disabled if he stopped the substance abuse, *see* 20 C.F.R. §§ 404.1520(g), 404.1535, 416.920(g), 416.935, the ALJ concluded that Plaintiff was not disabled, as defined in the Social Security Act, from November 13, 2008, the alleged onset date, through October 23, 2012, the date of the decision. (AR 24.)

Plaintiff appealed the ALJ's decision and submitted additional evidence to the Appeals Council on December 5, 2012 (AR 7-8), but the appeal was denied on December 18, 2013, making the ALJ's decision final (AR 46).

**D.    Plaintiff's Complaint**

On March 19, 2014, Plaintiff filed a complaint before this Court seeking review of the ALJ's decision. (Doc. 1.) Plaintiff argues the ALJ incorrectly applied the Medical-Vocational Guidelines to determine Plaintiff was not disabled because he does not have skills transferrable to a "significant range" of occupations. (Docs. 15, p. 10; 17.)

## III.    SCOPE OF REVIEW

The Commissioner's decision that a claimant is not disabled will be upheld by a district court if the findings of fact are supported by substantial evidence in the record and the proper legal standards were applied. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Schneider v. Comm'r of the Soc. Sec. Admin.*, 223 F.3d 968, 973 (9th Cir. 2000); *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999); *Davis v. Heckler*, 868 F.2d 323, 325 (9th Cir. 1989); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999); *Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1999); *Miller v. Heckler*, 770 F.2d 845, 847 (9th Cir. 1985) (the findings of the Commissioner as to *any* fact, if supported by substantial evidence, are conclusive.) Substantial evidence is more than a mere scintilla, but less than a preponderance. *Ryan v. Comm'r*

*of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008); *Saelee v. Chater*, 94 F.3d 520, 521 (9th Cir. 1996). "'It means such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).

"While inferences from the record can constitute substantial evidence, only those 'reasonably drawn from the record' will suffice." *Widmark v. Barnhart*, 454 F.3d 1063, 1066 (9th Cir. 2006) (citation omitted); *see also Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988) (the Court must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion.") The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citation and internal quotation marks omitted).

The role of the Court is *not* to substitute its discretion in the place of the ALJ – "[t]he ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted); *Macri v. Chater*, 93 F.3d 540, 543 (9th Cir. 1996). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002); *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (the court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."); *see Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987) (if substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a particular finding, the finding of the Commissioner is conclusive). The court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 885 (9th Cir. 2006)

(quoting *Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006)); *see also Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

### IV.   APPLICABLE LAW

The Medical-Vocational Guidelines are a matrix system for handling claims that involve substantially uniform levels of impairment. *See* 20 C.F.R. § 404, Subpt. P, App 2. The Guidelines present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant. *Tackett*, 180 F.3d at 1101. These tables are commonly known as "the Grids." The Grids categorize jobs by their physical-exertional requirements and consist of three separate tables – one for each category: "[m]aximum sustained work capacity limited to sedentary work," "[m]aximum sustained work capacity limited to light work," and "[m]aximum sustained work capacity limited to medium work." *Tackett*, 180 F.3d at 1101, citing 20 C.F.R. § 404, Subpt. P, App. 2, Rule 200.00. Each grid presents various combinations of factors relevant to a claimant's ability to find work. The factors in the Grids are the claimant's age, education, and work experience. *Id.* For each combination of these factors, *e.g.*, fifty years old, limited education, and unskilled work experience, the Grids direct a finding of either "disabled" or "not disabled" based on the number of jobs in the national economy in that category of physical-exertional requirements. *See id.*

This approach allows the Commissioner to streamline the administrative process and encourages uniform treatment of claims. *See Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983) (discussing the creation and purpose of the Medical-Vocational Guidelines). The ALJ may rely on the Grids alone to show the availability of jobs for the claimant "only when the grids accurately and completely describe the claimant's abilities and limitations." *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985); *see also Penny v. Sullivan*, 2 F.3d 953, 958 (9th Cir. 1993); *Heckler*, 461 U.S. at 461; 20 C.F.R. § 404, Subpt. P, App. 2, Rule 200(e). In other words, a claimant must be able to perform the full range of jobs in a given category, *i.e.*, sedentary work, light work, or medium work. *Heckler*, 461 U.S. at 461. Examples of non-exertional limitations are pain, postural limitations, or environmental limitations. *See Desrosiers v. Sec'y of Health & Human Servs.*, 846 F.2d 573, 577 (9th Cir. 1988) (Pregerson, J., concurring).

However, the fact that a non-exertional limitation is alleged does not automatically preclude application of the Grids. *Id.* The ALJ must first determine if a claimant's non-exertional limitations significantly limit the range of work permitted by his exertional limitations.[6] *Id.*; *see also Bates v. Sullivan*, 894 F.2d 1059, 1063 (9th Cir. 1990); *Polny v. Bowen*, 864 F.2d 661, 663-64 (9th Cir. 1988). If not, the ALJ's reliance on the Grids to determine whether the claimant is disabled is proper. *Id.*

## V. DISCUSSION

The only issue before the Court is whether the ALJ misapplied the Grids to find Plaintiff not disabled because he had skills transferable only to a single occupation. (Doc. 15, p. 8.) Plaintiff does not contend that he did not have transferable skills, that the ALJ erroneously assessed his RFC, or that the ALJ improperly assessed the impact of his substance abuse disorder on his ability to work. (*See* Doc. 15.) Plaintiff also does not argue that the ALJ incorrectly relied on Grids Rule 202.03; Plaintiff only argues the ALJ should have *also* relied on Grids Rule 200.00(c). (Doc. 15, pp. 8-11.)

Plaintiff contends that had the ALJ properly applied Grids Rule 202.00(c), which requires the Commissioner to identify a "significant range of . . . work" in order to determine a claimant can perform other work, the ALJ would have been required to find Plaintiff disabled because he has acquired skills transferable to only one occupation. (Doc. 15, pp. 10-11.) The Commissioner responds that Rule 202.03 *does not* incorporate Rule 202.00(c), and therefore the ALJ's disability determination was proper. (Doc. 16, p. 6.)

Grids Rule 202.03 covers an individual of advanced age, with limited or less education than a high-school graduate, and with skilled or semiskilled transferable skills. *See* 20 C.F.R. § 404, Subpt. P, App. 2, at Rule 202.03. For such an individual, Grids Rule 202.03 directs a finding of "Not disabled." *Id.* Because Plaintiff did not complete high school, was of advanced

---

[6] In this case, the ALJ identified non-exertional limitations, specifically Plaintiff's inability to "work from heights" and perform anything more complex than "simple and repetitive one and two step tasks." (*See* AR 17.) However, these non-exertional limitations do not affect Plaintiff's ability to perform exertional activities of sitting, standing, walking, lifting, carrying, pushing, or pulling. Vocational testimony was therefore not necessary, and the ALJ's reliance on the Grids to determine whether Plaintiff is disabled was proper. *See, e.g., Timmons v. Comm'r of Soc. Sec.*, 546 F. Supp. 2d 778, 797 (E.D. Cal. 2008).

age at the time he allegedly became disabled, and had transferable skills, the ALJ applied Grids Rule 202.03 to determine Plaintiff was not disabled. (AR 24; *see* AR 62-65; 170; 172.) The ALJ then relied on the VE's testimony that a single representative occupation an individual with Plaintiff's age, education, past relevant work experience, RFC, and acquired transferable skills could perform exists in the national economy – that of belt repairer, DOT 630.684-014. (AR 24.)

Plaintiff asserts the ALJ erred at Step Five by identifying only one occupation to which Plaintiff could adjust, *i.e.*, belt repairer. Plaintiff asks the Court to extend the Ninth Circuit's definition of "significant range," which pertains to Grids Rule 202.00(c), to his case; if so, the ALJ would have been required to find Plaintiff disabled because he does not have skills transferable to a "significant range" of occupations. (Doc. 15, pp. 9-11, citing *Lounsburry v. Barnhart*, 468 F.3d 1111 (9th Cir. 2006).) Plaintiff's request lacks merit.

Grids Rule 202.03 incorporates by footnote Grids Rule 202.00(f); it *does not* incorporate by footnote Grids Rule 200.00(c). *Id.* It is plain on the face of the regulation that the drafters did not intend to augment Grids Rule 202.03 to incorporate Grids Rule 200.00(c) – otherwise, there would have been a footnote directing such augmentation, as there is in numerous other Grids. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1044 (9th Cir. 2008); *see generally* 20 C.F.R. § 404, Subpt. P, App. 2.[7]

Grids Rule 202.00(f) requires that "[f]or a finding of transferability of skills to light work for persons of advanced age who are closely approaching retirement age (age 60 or older), there

---

[7] Plaintiff devotes a significant portion of his reply brief to arguing that because Grids Rule 202.00(c) "describe[s] the situation where even if the claimant has a high education and thus vocational more desirable (*sic*), a significant range of work is required in this situation as well. . . . [T]he footnote is not placed to indicate that a high school education somehow lessens what a 'significant range of work' encompasses, i.e. more than one job, *but rather to point out that a high school education would have little positive impact* and [it is therefore placed in footnotes dealing with a high school education]. . . . In other words, the footnote is utilized to reflect that even with a high school education this individual is essentially the same position (*sic*) as the individual in 202.03." (Doc. 17, pp. 4-5 (italics in original).)

The Court interprets Plaintiff's argument to mean that the Social Security Administration adds a footnote explicitly citing Grids Rule 202.00(c) only when the corresponding Grids Rule concerns an individual with a high school education. Under Plaintiff's interpretation, Grids Rule 202.00(c) is actually incorporated automatically into every single Grids Rule, and this automatic incorporation is then redundantly noted by footnote every so often. This interpretation is incompatible with the plain meaning of the Grids. The Social Security Administration clearly chose which Grids Rules to incorporate by footnote, and interpreting the Grids in any other way leads to chaos. *See Tommasetti*, 553 F.3d at 1044.

must be very little, if any, vocational adjustment required in terms of tools, work processes, work settings, or the industry." *Id.* at Rule 202.00(f).  Contrary to Plaintiff's argument, a plain reading of Grids Rule 202.03, and by incorporation Grids Rule 202.00(f), reveals no requirement that skills must be transferable to a "'significant range of semi-skilled or skilled work'" or the requirement that a significant number of occupations be available to a claimant.  (Doc. 15, p. 10.)

The plain meaning of the regulation directs the Court to uphold the ALJ's reliance on Grids Rule 202.03 to determine Plaintiff was not disabled.  "A contrary result would lead to the confused and arbitrary application of grid rules from one exertional category to other exertional categories and might well, in effect, defeat the goal of consistency and uniformity in decision-making that the particularized grids serve."  *Tommasetti*, 533 F.3d at 1044, citing SSR 83-10.

In sum, the ALJ properly applied the Medical-Vocational Guidelines to determine that Plaintiff was not disabled.

**CONCLUSION**

Based on the foregoing, the Court finds that the ALJ's decision is supported by substantial evidence in the record as a whole and is based on proper legal standards.  Accordingly, the Court DENIES Plaintiff's appeal from the administrative decision of the Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Carolyn W. Colvin, Acting Commissioner of Social Security, and against Plaintiff Rene Raul Martinez.

IT IS SO ORDERED.

Dated:   **August 4, 2015**                                **/s/ Sheila K. Oberto**
                                                                            UNITED STATES MAGISTRATE JUDGE